In the Matter of the Accounting of HERMAN LEVIN, as Executor of MORRIS LEVIN, Deceased.

Surrogate's Court, Bronx County, March 15, 1949.

*Max Zucker* for executor, petitioner.

*George A. Spiegelberg* and *Daniel M. Brams* for Max Levin and another, individually and as executors of Morris Levin, deceased, respondents.

*Nathaniel L. Goldstein, Attorney-General (George Grau* of counsel), for Industrial Commissioner of the State of New York.

*John P. McGrath, Corporation Counsel* of the City of New York.

*John F. X. McGohey, United States Attorney,* for the Collector of Internal Revenue.

HENDERSON, S. The decedent was survived by two sons and a daughter. The oldest child is a son by a former marriage. The second marriage occurred when the oldest child was still very young. He was brought up by a paternal grandmother and does not appear to have been a member of his father's household after the remarriage. However, there appears to have been the bond of affection which usually exists between father and son.

The decedent's will revoked a previous will executed by him. It directed a division of his estate among his three children equally and named all of them executors.

The oldest son has filed an accounting. A number of persons have filed objections, including the other executors. Although the objections filed by Max Levin and Belle L. Burrill, the other executors, are numerous, it was agreed that the court concern itself at this time only with their objections, " One " and " Ten ".

"One": This is a personal claim made by the objectants in which they assert that they are entitled to the entire estate to the exclusion of their brother, Herman, by reason of an agreement made between their father and mother.

An attorney who was related to both the decedent and his wife testified that shortly before September 14, 1942, he was requested by his aunt to come to her home where she lived with the decedent, her husband. He related a lengthy discussion. Yetta Levin, the wife, was insistent that upon the death of her husband and herself, their estate should be divided equally between her two children. It appears that the decedent was reluctant to agree to his oldest child's disinheritance. His wife, however, was adamant and such an agreement was made.

The attorney was instructed to draw a will for Yetta Levin by which her account of approximately $4,000 in the Metropolitan Savings Bank was to be shared equally by Max and Belle. The income from the balance of the estate was to be used first for the payment of insurance premiums on her husband's life and the balance to be paid to him until his death or remarriage.

The will of the decedent was to provide that his estate was to be given to his wife, and in the event that she predeceased him, divided between Max and Belle.

Yetta Levin executed her will September 14, 1942, at her home. The decedent executed his will on September 16, 1942, in the attorney's office.

At that time a conformed copy of Yetta's will was shown to him. The attorney gave him a letter and told him that his wife requested him to sign it. He read and signed this letter which reads as follows:

> "2712 Colden Avenue,
> Bronx, New York.
> September 16th, 1942.

Mrs. Yetta Levin,
2712 Colden Avenue,
Bronx, New York.

DEAR YETTA:

This is to confirm our agreement as follows:

You have under date of September 14, 1942, made a Will whereby you have bequeathed and devised to me the entire net income of your estate after the payment of certain premiums, if any, on life insurance carried by me. You have done so in the knowledge that if you should predecease me I will leave my entire estate to our children Max Levin and Belle Burrill. I

have this day made a Will in which I have devised and bequeathed my entire residuary estate to our children Max and Belle in the event that you should predecease me.

This letter is to confirm my agreement that in the event that you should predecease me, and that at the time of your death you should not have revoked your said Will made on September 14, 1932*, I will not revoke or alter my said will made today.

Affectionately,

(Signed)  Morris Levin<br>MORRIS LEVIN ''

The court is satisfied that the testimony of the attorney is truthful. The letter signed after reading the conformed copy of Yetta's will confirms the agreement and corroborates the witness.

Yetta predeceased her husband. Her will as executed on September 14, 1942, was probated, and the decedent has accepted the benefits thereunder.

The accountant contends that there was no consideration for decedent's agreement as he received less than the amount that he would have received had he elected to take against the provisions of the will pursuant to section 18 of the Decedent Estate Law.

A surviving spouse might elect to take against the provisions of a will such as that of Yetta Levin.

The provision that he take income " during the term of his natural life, or until he remarries," has been held to permit an election (*Matter of Byrnes*, 260 N. Y. 465).

Whether or not the decedent received more or less than the sum to which he would be entitled pursuant to section 18 may be open to some question, but the probability is that he received less. In any event, that is not the test. He did receive something different than his wife was required to give him by law. The court will not inquire as to whether the decedent made a good or a bad bargain. The rule of law as to consideration is well settled and is defined by Williston on Contracts (Vol. 1, Rev. ed., § 102): " The requirement ordinarily stated for the sufficiency of consideration to support a promise is, in substance, a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor."

The court finds that there was a valid agreement between the decedent and his wife. The objectants are entitled to its enforcement by a decree providing for an equal division of the estate

---

* So in original — typographical error.

between them after the payment of debts, funeral and administration expenses.

" Ten ": This item involves a personal claim of the accounting executor. He is an accountant and is claiming $1,200 for services to the decedent in the years 1944, 1945, 1946 and 1947.

The decedent was a painting contractor. The amount of business that he did is not shown except for one of the four years, when it was approximately $4,000. He probably did a small business but this is not stated to belittle the services of the executor. The court believes that they were substantial. In any case where an executor makes claim against the estate, the court is required to scrutinize it. In this case there is the additional factor that the claimant is the decedent's son. They appear to have been on terms of affection. As stated above, the decedent's business appears to have been small and it does not appear that any bill was sent by the claimant to the decedent during these four years. He undoubtedly feels that he has been treated inequitably by his father. The court believes that these services were rendered because of love and affection and that no charge was intended.

The items shown in D-2 of $25.62, $34.39, $129.52, $18, $2, $128 and $5 were sums expended by the claimant for his father for which credit will be allowed.

The loans of $200 and $150 have not been proven and are disallowed.

The determination of objection " One " above makes a ruling on a number of the other objections unnecessary. However, disposition of objections " Eight " and " Nine " is necessary. The claims of the Industrial Commissioner of the State of New York and of the City of New York are still to be adjusted.

This matter is placed on the calendar of March 28, 1949, for a further hearing. Serve notice of hearing and file same with proof of service on or before March 23, 1949.